THE PEERLESS.[1]

BYERS et al. v. THE PEERLESS.

(District Court, S. D. New York. January 6, 1892.)

COLLISION—HELL GATE—EAST CHANNEL—DUTY TO ALTER COURSE IN ACCORDANCE WITH WHISTLE—RULE 19.

A tug, with two small schooners in tow on a hawser, was going up the east channel of Hell Gate with the first of the flood-tide, and was about in the middle of the channel. A steam-yacht, bound west, took the east channel to avoid meeting two sailing vessels, directly in front of her. On seeing the tug, the yacht gave one whistle and ported her helm. The tug immediately responded with one whistle, but did not alter her wheel. As soon as the yacht saw that the tug did not change her course she reversed, but too late to avoid the tug, which was sunk. *Held*, that the yacht had the right to take the east channel, and her navigation was without fault; that the cause of the collision was the failure of the tug to alter her course in accordance with the whistle, which there was nothing to prevent her from doing, and she was consequently solely liable for the collision.

In Admiralty. Suit to recover damages caused by collision. Libel dismissed.

*Carpenter & Mosher*, for libelants.

*Wing, Shoudy & Putnam*, for claimant.

BROWN, J. At about 8 o'clock P. M. on June 26, 1891, the libelants' steam-tug Thomas Y. Boyd, while going up the easterly channel of Hell Gate between Flood rock and the Astoria shore, in the first hour of the flood, and having in tow, on a hawser of 40 fathoms, two small schooners, each about 65 feet long, came in collision with the steam-yacht Peerless, bound west, at a point a little below the line running from Hallet's Point light to the northerly end of Flood rock. The stem of the yacht ran into the starboard side of the tug. The force of the blow, with the

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

flood-tide, carried both together near the dredge at the upper end of Flood rock, and, as soon as the yacht was disentangled from the tug, the latter sank, and became a total loss. This libel was filed to recover damages, alleging negligence of the yacht in not taking one of the westerly channels, viz., either the middle or the main ship channel, and in not keeping out of the way of the tug. The claimant contends that the accident arose wholly from the negligence of the tug in not porting her wheel as she might and ought to have done after the exchange of one whistle between the two steamers.

The most important fact in dispute between the two parties is the position of the tug at the time of collision. The clear weight of evidence is that the tug was then in mid-channel, with the schooners directly astern of her; that is to say, about 300 feet to the westward of the Astoria shore, and not within 100 or 150 feet of the Astoria shore, as several of the libelants' witnesses allege. This appears, not only from the greater number of witnesses who testified to this fact, including some called by the defendant who were in the best position for seeing the true place of the tug in the channel, but from other circumstances, which confirm the weight of the direct evidence; for the tug after collision was carried by the force of the blow with the yacht close to the dredge on the western line of the channel, and this could not have happened if the collision had been close to the Astoria shore and the light. With the Peerless backing and the flood-tide, the tug could not have been carried so far to the westward, and she must also have been swept further to the northeastward. The schooners, moreover, after the collision, the hawsers being cut or broken, continued on in about mid-channel, and passed about 100 or 150 feet to the eastward of the boats in collision.

The Peerless, at the time of the exchange of one whistle, was upon a course about west, which course she had taken from about 300 feet off Negro point, and which made her cross from Negro point to Hallet's point two points to port of the channel line. The exchange of one whistle was made when the Peerless had nearly reached the light on Hallet's point, and the tug opened up below it. The boats must then have been at least 1,000 feet apart, and probably more. The Peerless was running at half speed, about 7 knots through the water or 5 knots by land; the tug, about 4 knots by land or 2 knots through the water. The signal of one whistle which the yacht gave to the tug, and which the tug immediately answered with one, imported that the boats should pass port to port, and that the tug would keep to the right. The tug did not do so, but kept a straight course, and without slacking speed until collision. The yacht ported hard, and, as soon as she saw that the tug was not turning to starboard, reversed, but not in time to avoid collision. Under her port wheel she changed before collision about two points to starboard, so as to head nearly directly across towards the dredge at the north end of Flood rock.

I find that there was nothing to prevent the tug from porting her wheel, and going to the right, as her signal agreed she would do. Despite the claimant's testimony this is evident, not merely from the evidence

of the libelants' experts, but from the fact that the two schooners lashed together behind passed on without difficulty, notwithstanding the fact of the collision. It is self-evident that a tug like this, which is handled easily, could have gone to the right, as her signal imported she would do, with perfect ease, and so saved collision with herself. Nothing prevented the slacking of her hawser for a moment, if that was necessary for a quick turn; and the schooners would not have been thereby in the slightest degree endangered, as their subsequent passage proved. As the tug could have pursued this course without difficulty, she was legally bound to do so, both under the agreement made by the exchange of one whistle and by the rule of the starboard hand, (rule 19.) Her failure to do this brought on the collision, for which the tug is therefore to blame.

I find no fault proved in the yacht. She was meeting two schooners under sail that were beating to the eastward through the gate, and were right in front of her in different positions. The course adopted by the yacht under such circumstances, viz., to go through the easterly channel, was deemed by her master to be the most prudent course to adopt to avoid the two schooners, and, so far as I can perceive, was a proper one. If the tug, when below at Astoria, gave any long whistle, as some of her witnesses testified, it was not heard by anybody on the yacht or other vessels near. The yacht, therefore, had a right to suppose that the easterly channel was clear. But even had the tug's long whistle been heard, if she gave any, her position in the easterly channel was not such as to forbid the yacht to take that channel when two schooners impeded the course towards the middle and north channels; for, upon the westerly course that the yacht was holding, the evidence shows that there was no difficulty in her going to the westerly side of the easterly channel, and that when the exchange of one whistle was made there would have been no difficulty in passing the tug, had the tug observed her duty. The yacht had a right to assume that the tug would go to the right, as her whistle and the rule required. As soon as the whistles were exchanged, the yacht did all that was required of her in porting her wheel; for there was time enough and space enough for the tug to go to the right. I am satisfied that the yacht backed as soon as she could perceive that the tug was not doing her duty. She was under no obligation to stop and back as soon as the exchange of one whistle was made, because that exchange of whistles was a suitable and sufficient provision for avoiding the collision, had the tug performed her part. That exchange of whistles for the time being, therefore, determined the risk of collision, as the yacht had a right to assume; and, as soon as risk of collision could reasonably be apprehended anew, the yacht reversed. This was all that was required of her by the rules, or by common sense and prudence. The collision being, therefore, the fault of the tug, the libel must be dismissed, with costs.